May it please the Court, Warren Metlisky for the appellant Ernesto Lira. I'd like to reserve a few minutes of time for rebuttal, although I'll do my best not to use the entire. I probably agree that the unexhausted 98 and 99 events, those claims should have been dismissed as unexhausted, but not the 96 grievance for the 96 incident, for the claim. I'm sorry, Your Honor, which specific claims are you asking about? Well, let's see. I'll make sure I've got the right. Yeah, yeah, you do. You're the, yeah, you represent the prisoner, don't you? Yes, Your Honor. All right. And the district court dismissed the entire petition because two of the claims were unexhausted and one of the claims was exhausted. Is that correct? Was the 96 claim exhausted? Well, Your Honor, it's actually a constellation of due process claims, so it's not that there's just one, two, or three. There's one cause of action in terms of the lawsuit. Is that right? There's, it's been framed as one cause of action. The trial court held that each particular ICC review, each review of my client's housing status was a, could give rise to a separate claim. So within claim one, there's a constellation of a bunch of due process claims that are not easily severable into time periods 98, 99, and 96. It's continuing as the review process continues. Well, one question I have is whether there really are three claims here, as there are in some other cases, whether there's just one which was exhausted three different times. Well, I mean, that would certainly be our position, Your Honor, which is that fundamentally this claim here is about Mr. Lira's validation and consequent placement and retention in segregated housing. But do you have a, if we were to, if you were, we were to deal just with the 96, if we were to regard the case as exhausted in 96 and say that the rest of it could just essentially, it doesn't matter because, but don't you have a, what's your statute of limitations situation? Don't you have a big statute of limitations problem at that point? Well, we certainly do if the exhausted claim is dismissed. Well, let's assume it's not. Yes. If we were to say you have a valid claim for 96, it should not have been dismissed. It was exhausted. If the Court wants to dismiss 97, 98, 99, fine, but it shouldn't dismiss 96. You wouldn't have a statute of limitations problem, I gather. No, Your Honor. The Court's already ruled on statute of limitations on this issue. Okay. That's what I'm trying to find out. That's what Judge Berger was asking. I'm sorry, Judge Berger. Okay. Okay. Go ahead, Lira. So are the 98 and 99 incidents simply extensions of the 96 basis for its claim or something? Yes. If I can run through a few facts to try to make this a little more clear. Mr. Lira was validated apparently in 93 while he was on parole, was never told about that, showed up at DVI in late December 1995 and was told that he had been validated. He wasn't given any evidence. He was placed in administrative segregation as a result of that validation and basically told you have to remain here until we get some confirmation that, in fact, you have been validated. When the prison administration received, finally received some documentation on his prior validation, of which he'd not been made aware, they looked at it and they said this doesn't meet our current standards, and so they sent it back off to Sacramento to have him revalidated using the exact same information. He wasn't made aware of that either. During the entire time period, he was kept in administrative segregation. Once he was revalidated, which happened after he filed his initial grievance, he was transferred to Pelican Bay. He was placed in the SHU at Pelican Bay and retained there. And the entire time that he was in Pelican Bay, he was there based on the fact that this revalidation had occurred, which relied on the exact same information used in 1993. And was this part of his 1996 grievance? Yes, it was, Your Honor. Exhausted then? Yes. Justice, I'm a little mystified about why we even have this issue here, because it seems to me that there are cases in which there are different claims, but I'm not sure we have different claims. We have one claim, our due process for being in administrative segregation. It was once exhausted. I suppose insofar as he later exhausted, later filed grievances and added something. Maybe that doesn't come in. He added some letter and what? What else did he add later on? Well, later on, he was finally given a review of his file and was finally given the information upon which they relied for his validation, and he tried to challenge that yet again. I mean, our position, Your Honor, is certainly that this is really just one claim. Unfortunately, the district court didn't look at it that way. The district court looked at it as a constellation of different claims. But you see, oddly enough, and this is what confused me, there were other causes of action here which were dealt with on the merits earlier on, right? Yes. Were those exhausted? Yes, I believe they were, Your Honor. One was a claim of denial of access to the law library. Those were separately exhausted and had nothing to do with these grievances. I believe so, Your Honor. I wasn't sure they were. I thought they weren't. I'm not certain I think that they were, Your Honor. Well, suppose that the 98 and 99 incidents of which he complains, he complains not only of the failure or the lack of due process in assigning him to administrative segregation and retaining him there. But suppose he's claiming other things, too. The prison food is no good. He doesn't get the right letters home or whatever. If the 98 and 99 contains items relevant to the administrative segregation placement, it seems that to the extent they do, that's, as Judge Berzon points out, all part of the 1996 claim, just perhaps further evidence thereof. But are there other things in the 98 and 99 claims that do not relate to his due process claim relative to administrative segregation? Well, in his 98 grievance, there are other issues that he raises. But the primary issue is that he didn't sue on them. Is that right? No, no. So the only thing that's here in court from those grievances is the due process claim dealing with the administrative segregation? Yes. All right. Well, maybe you want to go out on and argue the theoretical issue as well, because we have to hear what your opponent has to say. But in other words, assume for now that there are separate claims. Given what Your Honors have said, I would just submit on that, on the theoretical issue of whether total exhaustion is required, other than to note that the Second Circuit has recently come down on this issue. I made the court aware of it in a 28-J letter in Ortiz v. McBride and said that the total exhaustion rule is not required. But wait a minute. I have found these briefs baffling. I mean, the total exhaustion rule is required, right? We agree that you cannot go forward with a half, with a cause of action in which half the claims are exhausted and the other half aren't. The unexhausted claims have to go one way or another. This is what I think Judge Thompson asked you at the very beginning. Is that right? Yes. You agree. You're not arguing, as has been said at some points, that the unexhausted claims can piggyback on the exhausted ones. No, not at all. They're gone. Yes. All right. So we have a very fine-cut question, which is how are they gone? And one of the things I'm having some issue with is what are the practicalities of this? Why does it matter that much? Is it because of the statute of limitations? Well, it's – that's one of the big issues. It's statute of limitations. It's judicial economy. And additionally, there's a question if a fully exhausted claim is dismissed. There's a question as to whether, for example, the litigant or Mr. Lyra in this case can afford a second filing fee. So it's not just a statute of limitations bar. It's a question as to whether we're creating a procedural rule that in some way bars a fully exhausted claim. Well, what if the rule was, as it is in Rose v. Lundy, that you dismiss the complaint but not the action and you can amend the complaint? Is that – that's another option, right? Well, that would – I mean, certainly that would work, Your Honor. But the procedural norm is that when a court is faced with a claim in front of it that has merit, the court must proceed on the claim. It can't simply dismiss it because there are other claims around it that may not have  merit. The court may want to, but it doesn't generally have the power to do so. What are you arguing? What precise procedure are you arguing for? We're arguing for the simple procedure that the court should dismiss the unexhausted claims and proceed to the merit on the exhausted claims. And not dismiss the complaint and let you amend it. Correct. And that – What are the unexhausted claims? Do they have anything to do with years, 98 and 99? Or are they just separate claims entirely that weren't exhausted? Well, in this – in this case, it gets to what Your Honor was asking about earlier. The unexhausted claims, as the trial court held, were – But from your standpoint, do you believe there are unexhausted claims? No, we do not. All right. But then back to Judge Thompson's question. Did the district court identify what it thought were unexhausted claims? Yes, it did. And it applied a bright-line rule, which we've argued is inappropriate. What it said was everything that happened after the time that the grievance was filed, after it was filed, which is July 29th, 1996, anything that happened after that is unexhausted. Okay. And that bright-line rule doesn't comport with what the – Happened, meaning he stayed in administrative segregation or facts pertaining to the administrative segregation or what? In other words, if he was there impermissibly to begin with, or at least as of the time of the last appeal in the 1996 grievance, would he be let out now? Is the problem that it wouldn't be a basis for releasing him because something may have happened between 1996 and now that he could have exhausted separately? That is the basis for holding him now? Well, as a factual matter, he's now been released. Well, there was the revalidation, right? Yes. Which was after the 1996 grievance. It was in the middle of the 1996 grievance. And that's really the issue. It's right in the middle. It's between – there's an informal level and then there are three levels of administrative review. The grievance – I mean, excuse me. The revalidation occurred between levels two – excuse me, between levels one and two. And he was actually allowed to bring that issue up in his – once he arrived in Pelican Bay, he received his warden's level decision, the second level. And if – I'll point your honors to Appellant's supplemental excerpts of Record 72. At the very bottom, there's a section that allows Mr. Euler to add any sort of additional information that he would want. And in there, he said, first of all, to this date, many request forms later, I have not received the supposed 128B2, which is his validation, dated 9-4-96, or any other documentation relied on to validate me as something I'm not. I'm now here at Pelican Bay, shoe with an indeterminate shoe. So the – what the trial court did was they said nothing that arises after July 29, 1996, could possibly be exhausted. When the original grievance was filed. Yes. That's when the original grievance was filed. And at a minimum, we know that the director's level decision specifically considered issues that occurred afterwards. Now, we're not asking the court to determine exactly what the scope of the unexhausted claims are. As I said, we would suggest that all the claims are – have been fully exhausted. But that's going to be a factual matter, I think, for the trial court. All we're asking is the court to, on remand, say to the district court, you applied the wrong standard. It's not a bright-line rule. It's a question of what claims would – excuse me. What claims would the district court on notice about? And what claims were they afforded opportunity to address internally? The prison claim. The prison claim. Yes. Right. All right. If you were about trying to say, you'd leave it at that and save it for rebuttal, so. Yeah. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court. My name is Jonathan Wolfe, and I represent the defendant appellees, and I am an attorney in the Attorney General's office. We believe that the Prison Litigation Reform Act mandates exhaustion. And let me explain this case a little bit. The inmate filed in July 1996 inmate grievance. That grievance grieved his December 1995 placement in administrative segregation at the Dual Vocational Institute. Yet the complaint in this action alleges due process violations spanning four years at two different prisons against 19 different defendants. The district court dismissed this action without prejudice based on the total exhaustion rule, and the defendants request that this action be affirmed here. I know you've talked a lot about the facts, so let me see if I can explain a little bit more about those to you so you can see the differences in the due process violations. As Judge Ilsen said in the lower court, the placement in administrative segregation in December 1995 was a separate incident. You look at it differently when you're doing the analysis. What were the factors, what was the evidence to place them in administrative segregation as opposed to the due process, excuse me, as opposed to the periodic reviews that took place over four years by different defendants at different prisons? Additionally. Well, it may be that there will be consequences for the plaintiff. The defendant found that only the 1996 case grievance was exhausted, and that nothing else was exhausted. But isn't he entitled to take those consequences? In other words, it may be that it will truncate the scope of the due process inquiry, but why can't he do that if he chooses to? Defendants submit that the total exhaustion rule, which means that no action may be brought until administrative remedies are exhausted, dictates that the entire action be dismissed without prejudice for the inmate to go back, exhaust those claims, and bring them in one suit. Suppose he chooses to say I'm willing to go forward right now with a suit as to which I understand the only exhausted claim is the December 1996 claim. Anything that you don't think was encompassed, that it turns out was not encompassed in that claim, I'm going to lose on, but I'm willing to do that. We again submit that because of the policies behind the Prison Litigation Reform Act, as mandated by Congress and as signed into law by President Clinton in 1996, dictates that... What I wanted to explain is that the policies as articulated by Congress and as further demonstrated by the Supreme Court in Porter... Suppose he had never brought the two later grievances and had brought this lawsuit, then what? Could you repeat that, please? Suppose he had never brought the two later grievances and had brought this lawsuit. And the complaint alleged just those exhausted claims without any unexhausted claims in it? It alleged whatever it alleges now, all right? And presumably what would be said to him was some of maybe, I mean, and I'm not familiar in enough detail with the complaint, that maybe some of this pertains to a later period that you didn't exhaust, so you can't do that, but you can litigate whatever it is that you did exhaust. In other words, some of this could be beyond the scope of the exhaustion. You can't do it. Does it matter that he brought those two grievances as opposed to if he hadn't brought them at all? I don't think those two grievances matter in this case, Your Honor. I think what we're looking at is just the one exhausted inmate appeal. Right. Exactly. That's what we're looking at. Okay. And that one exhausted inmate appeal dealt with very few of the facts in this case. It dealt with maybe six months' worth of facts. And I think Judge Bergen is trying to ask you a nice, neat legal question, which is why, if you bring an exhausted claim and an unexhausted claim in the same complaint, why can't you just dismiss the unexhausted claim and allow the exhausted claim to proceed, a totally exhausted claim? And your answer, I gather, is that Congress and President Clinton had in mind somehow that the courts would dismiss the entire proceeding rather than just the unexhausted claim because it's a jurisdictional requirement that the entire matter be exhausted when the complaint is filed. Correct. Well, that's not right, because we specifically have held that it's not a jurisdictional right. Haven't we held in Wyatt v. Turner that this is not a jurisdictional requirement? So that can't be the reason. So what's the reason? No, you're right. Absolutely. I didn't mean to insinuate that. Well, I sort of led you into it. Forget the jurisdictional part. What you're saying is that somehow President Clinton in his wisdom decided that when we got a case like this where there's an exhausted and an unexhausted claim, he wanted the entire complaint to be dismissed so that it would be an entirely exhausted complaint, and you couldn't file a complaint if one claim was totally exhausted but not the other, that somehow that was what they had in mind. Well, as the Porter decision set forth, the purpose behind this statute was to reduce the quantity but to increase the quality of prisoner litigation, and we submit that to allow a court not to get enmeshed in often entangling process of determining which claims are exhausted and which claims are not, you know, determine which claims are severable. It makes more sense under this statute, which was the purpose of the statute, to exhaust the claims. So you're asking for a rule, as I understand it, that although you rely heavily on the habeas analogy, this is a more stringent rule than the rule that applies in habeas. Correct. Because in habeas, you can amend the complaint, and you're arguing that you can't amend the complaint. You actually have to dismiss the case, not just the complaint, and start over again. That's correct, Your Honor. So you're not using the habeas analogy. In fact, you're going further than habeas. Well, we're using the policy reasons behind the habeas analogy, but when you look at the statute, the exhaustion statute in the habeas analogy, that statute says that all administrative remedies must be exhausted before the petition is granted. In this section, 1997 E.A., the section says no administrative remedies may be brought no action may be brought until administrative remedies are exhausted. This Court found in McKinney that the exhaustion requirement is a precondition to suit. The habeas exhaustion is not that. It allows for a case to be dismissed with leave to amend. That's the difference in my mind, Your Honor. But McKinney, there was nothing that was exhausted, and here there is something that was exhausted. Right? There is a case that can go forward. I mean, that turned into the fact that there was nothing that had been exhausted. There was no case for the Court that could have gone forward. Correct. Correct. I mean, I was trying to demonstrate that this is a precondition to filing suit as opposed to habeas, which is a little bit different than that. The policy reasons behind the habeas exhaustion, total exhaustion rule, are analogous, including allowing the lower, allowing the district, excuse me, allowing the Department of Corrections to do a full fact-finding investigation, to give that record to the Court, to allow ---- But the difference is that in a habeas, you're usually dealing with one ultimate conviction and a set of different attacks on the ultimate conviction. This case, the facts of this case are somewhat misrepresentative or not representative, I think, of the prison cases because here it's somewhat similar. There are related claims or related grievances to one set of circumstances, although that may lead to the conclusion that it really was exhaustion. But you can have totally disparate things, things that have nothing to do with each other, that happen at completely different times, that somebody has chosen to put into one lawsuit and you can just lop off the ones that weren't exhausted with absolutely no consequence. In other words, you know, one complaint is that I have a medical complaint in 1998 and another one is an excessive force complaint in 2000. He happens to put them into one lawsuit and you're saying that instead of doing the usual and logical thing, which is just to dismiss the unexhausted one, you have to dismiss the action, although they're completely unrelated, right? I think it would depend on the circumstances of each case. Why? I mean, I can speak to my case here today where there are interrelated facts. I think we all agree that the facts are interrelated, but the claims are separate. But the statutory language argument you're making for going further than habeas doesn't depend on that at all, right? I mean, if you're really taking your statutory interpretation argument seriously, which is that no action may be brought, meaning nothing in the case, if anything in the case is unexhausted you have to dismiss it, then it doesn't matter what's in it. You're correct, and I amend what I said. The statute does, it is explicit. And I think another analogy that this Court may want to consider is in a Bivens action. Under the old exhaustion requirement in Bivens, an inmate had to exhaust injunctive relief. In this Court's decision in Terrell v. Brewer, the inmate brought an action that had neither an exhausted injunctive relief claim nor a monetary relief claim that was exhausted. Mind you, the monetary relief claim did not need to be exhausted. But this Court in that case said we will dismiss the entire action without prejudice for failure to exhaust the injunctive relief claim. The Court did not allow the monetary relief claim to go forward for the same policy considerations that we are submitting here today. Additionally, for the reasons we discussed, we believe that this case should be affirmed and the entire action should be dismissed without prejudice. If there are no further questions, we will submit. Thank you, counsel. Thank you. I have one question. If it's dismissed without prejudice and we were to affirm that, would they be able to refile or would there be a statute of limitations problem? The statute of limitations issue was already addressed by the lower court, finding that there was not a statute of limitations problem for the inmate bringing the case when he did. But, yes, there was none then. But if it's now dismissed and they have to refile, would there be a statute of limitations problem? I think that would be an issue for another day, but I think it would be an issue of either equitable tolling or some sort of tolling. I think that would be an issue that would have to be addressed in a separate matter, Your Honor. Well, I know we wouldn't resolve it here, but it might have some effect on what would be a reasonable or rational decision, whether the consequence of a dismissal, even though without prejudice, would be that the statute would be floored. It would not be just in this case. It would be in general. It would be an answer we should know, I would think, before determining what the remedy should be. And if you say it's an issue that may depend on whether equitable tolling applies or not, and you're not sure whether it applies, that's as far as we can go this morning. Okay. That's correct, Your Honor. All right. Thank you. Thank you, Your Honors. Do you ever have a view as to whether, if it were dismissed without prejudice, it would create a statute of limitations problem or whether tolling would solve the problem? Well, I think we would have a statute of limitations problem, whether we could overcome it. What is the limitations period? Where are we getting it from? The limitations period is from the California statute of limitations. So it's one year plus two additional years for time in which a prisoner is incarcerated. Our position would be that there would be equitable tolling in addition to that. But either way, if a new complaint is filed based on the fully exhausted claim, there's going to be a statute of limitations argument. We are confident that we'll be able to overcome it. But the court's going to have to spend a lot of time and energy and judicial resources on dealing with that issue. It's probably not applicable here, but the habeas analogy would suggest that the time pending in federal court doesn't count. But I think that's because of a federal law issue, and here you'd be using California tolling law in prison. Yes. I'll try to keep this very short. I would like to make a point about Terrell. If you look at that case, that's a case where the plaintiff was saying that he didn't need to exhaust. It's entirely different from this case where all we're talking about is what to do with fully exhausted claims. And because, Your Honors, clearly we're interested in the dates of what occurred when, in terms of whether this is one due process claim or whether it's a series of individual claims, I wanted to make sure that the timeline is clear. We've been referring to the 1996 events. There's a little bit of ambiguity there as to exactly what that is, in that the district court looked at the 1996 events as only that which occurred before the grievance was filed initially, that being before the end of July 1996. There's also 1996 and into 1997 events that occurred before the director's level decision came down. Now, while we hold the ---- So there are three categories. Are there also events that occurred after the director's decision came down? Well, our position, Your Honor, is that it's all one thing. It's all one due process claim. The district ---- I understand that's your ultimate position, but I'm trying to understand factually. There was an initial determination in 96. Yes. Then there was another determination while he was going through the process, which was presented in his papers before he got to the final level. By determination, you mean of his gang status? Validation or revalidation. Yes. Okay. Then was there a third action sometime after the final decision in the grievance? There was an action in late 1998 where they looked again ---- I believe it was late 98, where they looked again at his validation after he'd filed numerous appeals and constantly hammered away at the prison administration to address the issue, where they looked at it again and added some additional information and said, oh, now your validation is appropriate. Now, but the complaint is all full of facts from after 97, right? Yes. And if those facts were pertinent, then there might be a ---- in other words, if they somehow support the due process claim, there might be a problem. There might be, which is why, Your Honor, I think that the district court needs to look at this issue again. But, I mean, if you look at his institutional classification reports throughout 97 and 98, it's relying on the exact same information. The only reason for placing him and retaining him in the Pelican Bay Shoe over and over again is his revalidation, which, again, was based on the exact same information that his initial validation was based on. Let me ask you a question. Below, was he pro peri? Yes. And you've been appointed on appeal. Yes. You think the district court should look at this again. Are you going to be representing him in the district court? I'm not sure, Your Honor. It wouldn't do much good if he's going to be pro peri, would it? Well, it would definitely help in that even the record that we have laid out, even, you know, the statement of facts in our brief is a lot more clear than the pro se handwritten brief that he's on. What do you want us to decide here, and what do you want us to leave for the district court to reconsider when it goes back? Well, first the legal issue, which is that this total, what we're calling a total exhaustion rule is not required and that the district court should dismiss the unexhausted claims and allow the exhausted claims to proceed. Now, incident to that is redetermining what is exhausted and what is unexhausted. And I would ask the court for a simple statement that the bright-line rule that nothing after July 29th, 1996 can be exhausted is incorrect, and the court should look at it again under a notice standard. All right. So you don't want us to determine. Excuse me. Yes. You don't want us to determine which parts of the claims are exhausted and which aren't. You want us to leave that to the district court and to say that whatever part, whatever is not, whatever has been exhausted may remain, and if there are unexhausted claims, they should be dismissed. If this court feels that on the record it can determine what claims are or are not, excuse me, are or are not exhausted, we would submit that they all are. I would welcome it if the court did that. Beyond that. I mean, it seems hard to claim that everything that's in the current complaint is exhausted because there is a bunch of factual information from 1998 and 1999 which couldn't have been considered earlier. So what is your argument about why those later factual allegations are either irrelevant or they're relevant and the prisoners had no chance to deal with them? How can we say everything in there that's in there now has been exhausted when there's a bunch of facts that occurred after the last level of the 1996 grievance? Well, the question then is whether those facts, as Your Honor said, are relevant to his claims. Right. Looking through the complaint, there's a lot of facts in there that have nothing to do with much at all. So that certainly needs another review. It's possible that there are facts in the complaint that might give rise to another claim. The district court didn't seem to think so. But that there might be some other claim in there. And then there's a question as to whether that's exhausted or not. We don't have any information on the record on that. But would it be possible to amend this complaint not so much to take out unexhausted claims, it's just to clarify it in terms of what it's about and which are the relevant facts and which aren't. And it may turn out that there's just nothing unexhausted about it or simply amend it in ordinary course. Yes, certainly. And in that regard, it seems to me, well, I guess that would mean we would remand and let the lawyer amend and choose as opposed to remanding with directions to the district court, which would, you mentioned one time, to consider what instances, I guess you'd say, were relevant to or necessarily intertwined with and therefore part of the original grievance in 1996. I think we've got some law in that when you maybe file a statute of limitation and notice or whatever, and then we ask, well, if these things relate back to or all are incident to this one claim, they can be asserted as part of that claim. That's the kind of thing I'm getting at, that the district court could determine which of those events were. Now, an alternative, I guess what Judge Berzon is saying is that we could just leave that to the lawyer and just say we reverse and would remand with directions to permit amendment of the complaint to assert and allege those things that are incident of and connected to the grievance that was exhausted. Well, and I think that both of those work. It might make more sense to allow the district court to make that decision. As I said, I'm not certain that we will also be representing Mr. Lyra in the district court and that he will have counsel. It might make sense for the district court to make that decision depending on the status of whether Mr. Lyra is proceeding per se or not. Okay. Thank you, Your Honors. Thank you, Counsel. The case just argued will be submitted. The next case on the calendar for argument is Misladen v. Lyra.
judges: Reinhardt, Thompson, Berzon